Miller *v.* Pittsburgh Railways Company, Appellant.

Argued April 21, 1958. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

Before BROWN, J.

*Con F. McGregor,* for appellant.

*Regis C. Nairn,* with him *James P. McArdle,* for appellees.

OPINION BY WOODSIDE, J., September 11, 1958:

This is an appeal by the defendant, Pittsburgh Railways Company, from a judgment in favor of the plaintiffs entered upon jury verdicts in favor of the husband-plaintiff in the amount of $2,500 and in favor of the wife-plaintiff in the amount of $5,000 for injuries sustained by the wife-plaintiff while she was a passenger on one of defendant's street cars. The appellant asks us to enter judgment n.o.v.

The testimony considered in the light most favorable to the plaintiffs, as we must in this appeal, establishes that on December 16, 1953, the plaintiff, Bessie Miller, and a friend of hers, Mrs. Dorothy Cook, were

the only passengers on a street railway car owned and operated by the defendant between Pitcairn and Trafford, in Allegheny County. The two women were seated near the center of the street car as it crossed the bridge between Pitcairn and Trafford. At the end of the bridge the car made a sudden stop on a curve leading from the bridge to the regular car stop. Passengers sometimes depart at this point rather than at the regular car stop. When the car stopped both women arose and proceeded towards the front of the car, which started moving again and shortly thereafter came to a sudden violent stop. Mrs. Cook was thrown off of her feet into a horizontal position on one of the long side seats of the street car and, when she arose, she saw the plaintiff, Bessie Miller, "wrapped around a steel pole near the front of the car". Mrs. Miller had been thrown against one of the steel upright poles with sufficient force to cause injuries to her shoulder and chest. Neither the plaintiff nor Mrs. Cook were holding onto anything for support at the time they were thrown by the violent lurching of the street car.

The defendant contends that the evidence is insufficient to establish negligence on the part of the defendant and that the failure of the plaintiff to hold onto any of the upright supports and straps available convicts her of contributory negligence as a matter of law.

The law in regard to the negligence of a street railways company for sudden jerks or lurches of street cars has been well established in Pennsylvania by a long line of decisions. Testimony indicating that a moving trolley car jerked suddenly or violently is not sufficient, of itself, to establish negligence in its operation. "There must be a showing of additional facts and circumstances from which it clearly appears that the movement of the car was so unusual and extraordi-

nary as to be beyond a passenger's reasonable anticipation, and nothing short of evidence that the allegedly unusual movement had an extraordinarily disturbing effect upon other passengers, or evidence of an accident, the manner of the occurrence of which or the effect of which upon the injured person inherently establishes the unusual character of the jolt or jerk, will suffice." *Staller v. Philadelphia Rapid Transit Co.*, 339 Pa. 100, 103, 104, 14 A. 2d 289 (1940); *Hill v. West Penn Railways Co.*, 340 Pa. 297, 16 A. 2d 527 (1940); *Hufnagel v. Pittsburgh Railways Co.*, 345 Pa. 566, 29 A. 2d 4 (1942); *Herholtz v. West Penn Railways Co.*, 362 Pa. 501, 504, 66 A. 2d 839 (1949).

The fact that a jolt is sufficient to cause a standing passenger to lose his balance, or to cause a passenger sitting on a lengthwise seat to be thrown against an upright, is not sufficient to establish negligence. See *Bollar v. Pittsburgh Railways Co.*, 153 Pa. Superior Ct. 199, 33 A. 2d 261 (1943). Nor is the fact that other passengers were "jolted about" or that "everybody in the car lurched" sufficient to establish negligence. *Smith v. Pittsburgh Railways Co.*, 314 Pa. 541, 171 A. 879 (1934). See also *Endicott v. Philadelphia Rapid Transit Co.*, 318 Pa. 12, 177 A. 17 (1935).

The only question before us in regard to the defendant's negligence, therefore, is whether the evidence is sufficient to establish such an unusual and extraordinary stop or lurch as would raise a presumption of negligence on the part of the defendant. We feel that the evidence is sufficient.

Defendant claims that the present case falls within a line of Pennsylvania cases in which it was held that the evidence of sudden jolts or lurches was insufficient to establish anything more than the jolts or lurches which could ordinarily be expected in normal street car operation. The evidence in the present case,

however, goes beyond the evidence in those cases cited by the defendant.

In *Bollar v. Pittsburgh Railways Co.*, supra, 153 Pa. Superior Ct. 199, 33 A. 2d 261 (1943), the evidence of the effect upon the other passengers was merely that they were thrown sideways on the seat and that a standing passenger had lost his balance. In *Smith v. Pittsburgh Railways Co.*, supra, 314 Pa. 541, 171 A. 879 (1934), the only evidence of the effect of the lurch upon other passengers was that one man was jolted about in his seat. In *Coyle v. Pittsburgh Railways Co.*, 149 Pa. Superior Ct. 281, 27 A. 2d 533 (1942), the evidence was that the other passengers lurched but that plaintiff was the only one that was thrown so violently. The Court there observed that there was "no evidence any of them were *thrown to the floor* or were injured." (Emphasis supplied). In *Staller v. Philadelphia Rapid Transit Co.*, supra, 339 Pa. 100, 14 A. 2d 289 (1940) there was no evidence of any extraordinary lurch and the plaintiff's witness testified that there was nothing unusual or violent about the operation of the car. In *Mervine v. Aronomink Transportation Co.*, 348 Pa. 475, 35 A. 2d 255 (1944), there was no evidence to indicate the other passengers were even disturbed. In *Hufnagel v. Pittsburgh Railways Co.*, supra, 345 Pa. 566, 29 A. 2d 4 (1942), the evidence was that people were slipping about in their seats and that a package had been jolted from a passenger's lap. In *Herholtz v. West Penn Railways Co.*, supra, 362 Pa. 501, 66 A. 2d 839 (1949), plaintiff's testimony showed that the other persons in the car "were not jolted off their feet but fell against her, causing her to sit down on a corrugated steel strip . . . which was at the top of the step leading from the platform into the car." In all of these cases the evidence failed to show an occurrence which could have been caused only by an ex-

traordinary jolt or jerk. On the contrary, the evidence indicated a mere loss of equilibrium brought about by a car movement of the type which passengers were bound to anticipate and guard against.

To permit an inference that the jerk or jolt was excessive based upon its effect on the other passengers, it must clearly be shown not only that the other passengers were affected by the movement, but that they were affected to a greater extent than was usual in the normal operation of a street car. *Hufnagel v. Pittsburgh Railways,* supra; *Herholtz v. West Penn Railways,* supra.

In the present case, however, the evidence is that Mrs. Cook, the only other passenger in the street car, was thrown from her feet and landed across the lengthwise seat with her feet off of the floor. This effect is sufficient to permit the jury to infer that the jolt or lurch of the street car in this instance was so unusual and extraordinary as to warrant a presumption of negligence on the part of the defendant.

The jury is entitled to judge the severity of the jolt or jerk by the effect which followed. *Klein v. Pittsburgh Railways Co.,* 252 Pa. 214 (1916); *Jenkins v. v. Beyer,* 118 Pa. Superior Ct. 527 (1935); see also *Sanson v. Philadelphia Rapid Transit Co.,* 239 Pa. 505 (1913); *Brown v. Chester Traction Co.,* 230 Pa. 498 (1911).

The defendant contends that the evidence shows that the plaintiff was not injured by the same jolt or stop which caused Mrs. Cook to be thrown onto the lengthwise seat. Although there appeared to be some confusion in both Mrs. Cook's testimony and in the testimony of the plaintiff, Bessie Miller, as to the exact jolt which caused the fall in the series of jolts and lurches which the car took, we think the jury could have found that Mrs. Miller's injuries and Mrs.

Cook's fall were occasioned by the same movement of the vehicle. See *Taylor v. Mountz,* 387 Pa. 321, 127 A. 2d 730 (1956) ; *Jenkins v. Beyer,* supra.

Defendant also contends that the plaintiff was negligent in failing to hold onto any of the straps or verticle bars in the car. We are not prepared to state that a failure of the wife-plaintiff to be holding onto some object for support was contributory negligence per se. She was walking forward to get off of the car and the jolt or jerk was unusually extreme. There is a question whether the car was moving when she arose from her seat. We think the question of whether plaintiff was guilty of contributory negligence in failing to hold onto some support and, if so, whether that negligence contributed to the accident, was a matter properly left to the finders of fact.

In both *Staller v. Philadelphia Rapid Transit Co.,* supra, and *Bollar v. Pittsburgh Railways,* supra, the plaintiffs were riding on a moving street car and in neither instance were they preparing to debark. " 'There is no hard and fast rule that requires a passenger in a moving trolley car who arises from his seat to observe special precautions to maintain his balance during *exceptional and unusual motions of the car.* Ordinary prudence, however, dictates the exercise of greater care in this regard when the car is in motion than when it is standing, . . . A passenger who chooses to stand in a moving trolley car must at least exercise care sufficient to enable him to *retain his balance during usual and expected irregularities in the movement of the car . . .' " Staller v. Philadelphia Rapid Transit Co.,* supra, 339 Pa. 100, 102, 103, 14 A. 2d 289 (1940) (emphasis supplied).

We think that the question of contributory negligence in this case was for the jury and that the facts do not "etch a picture of such uncontrovertible self-

abandonment to negligence that 'fair and reasonable persons cannot disagree as to its existence'." See *Nugent v. Joerger,* 387 Pa. 330, 332, 127 A. 2d 697 (1956); *McCune v. Ellenberger,* 182 Pa. Superior Ct. 442, 127 A. 2d 791 (1956).

Judgment is affirmed.