Commonwealth v. Noga

*Scott K. Oberholtzer, Assistant District Attorney*, and *William H. Platt, District Attorney*, for Commonwealth.

*Gerald I. Roth*, for defendant.

WIEAND, *J.*, May 25, 1978—Peter Noga was tried by jury and found guilty of unlawful possession of Eskatrol, a controlled substance, and of obtaining the substance by fraud. Motions in arrest of judgment and for new trial were filed and argued before the court en banc. They are now ready for decision.

It is well settled that the test of the sufficiency of the evidence is whether, accepting as true all the evidence, together with all reasonable inferences therefrom, upon which a jury could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt: Com. v. Wiggins, 472 Pa. 95, 371 A. 2d 207 (1977); Com. v. Green, 464 Pa. 557, 347 A. 2d 682 (1975); Com. v. Carbonetto, 455 Pa. 93, 314 A. 2d 304 (1974). Moreover, such evidence must be considered in the light most favorable to the Commonwealth, which won the verdict: Com. v. Wiggins, supra; Com. v. Green, supra; Com. v. Rife, 454 Pa. 506, 312 A. 2d 406 (1973).

The Commonwealth's evidence showed that on January 31, 1977, defendant, Peter Noga, presented to a pharmacist at Rea and Derick Drug Store, Whitehall Mall, Lehigh County, a prescription for 45 Eskatrol tablets, a controlled substance. The prescription was prepared for one "Hugh De-Courcey, Spring Ridge Apts., Allentown, Pa." It was on note paper reciting that it came from the desk of "E. W. Cook, D.O., Clymer Health Clinic, R.D. No. 3, Clymer Road, Quakertown, Pa." The

prescription was dated January 29, 1977 (two days earlier) and purported to contain the signature of "E. W. Cook, D.O."

The pharmacist, who had previously filled forged prescriptions for DeCourcey,* without then knowing them to be forged, called agent Daniel L. Licklider of the Pennsylvania Bureau of Drug Control. The prescription was thereafter filled by the pharmacist and put aside to await defendant's return. Upon his return, defendant received the prescription, paid for it, and started to leave the store. He was thereupon placed under arrest by agents of the Bureau of Drug Control.

The Commonwealth proved further that the signature of Dr. Cook on the prescription was a forgery. Dr. Cook had been employed by the Clymer Health Clinic from November 5, 1973, until September 26, 1975, but not thereafter. It also appeared that defendant had worked at the same clinic from September 14, 1973, to December 12, 1973. DeCourcey, it seems, had also worked there for several months prior to October 15, 1976, during which time he had been a patient of Dr. Cook.

The jury could also have found from the evidence that in January 1977, defendant and DeCourcey were sharing an apartment in New York City. When arrested, defendant was found to be carrying a list of physicians taken from the yellow pages of a 1977 Allentown telephone directory on which various markings had been made. He was driving DeCourcey's automobile.

The explanation offered by defendant was that he

---

* Robert O'Conner, the pharmacist who filled the prescription, testified that defendant was not the individual who had presented the forged prescriptions on prior occasions.

had obtained the Eskatrol tablets as a favor to De-Courcey, whom he believed to be a patient of Dr. Cook. He did not know, he said, that the signature on the prescription was a forgery. He also surmised that he had been carrying the list of doctors in his wallet for five years, having placed the same there at a time when he was seeking the services of a physician in Allentown.

Defendant's motion in arrest of judgment raises the issue of whether knowledge that the prescription was a forgery is an essential element of the offenses with which he was charged.

The provision of The Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P.L. 233, which makes unlawful possession of controlled substances a misdemeanor is section 13(a)(16), 35 P.S. §780-113(a)(16). It prohibits the following act: "Knowingly or intentionally possessing a controlled . . . substance by a person not registered under this act . . . *unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner,* or except as otherwise authorized by this act." (Emphasis supplied.)

To prove knowing or intentional possession of contraband, the evidence must show conscious dominion over the substance; that is, defendant must have had not only the power to exercise control, but he must also have had an intent to exercise that control: Com. v. Sterling, 241 Pa. Superior Ct. 411, 361 A. 2d 799 (1976).

To date, no decision rendered within this jurisdiction has confronted the issue of whether the Commonwealth must prove knowledge of an invalid prescription in order to sustain a conviction under 35 P.S. §780-113(a)(16).

Generally, criminal intent or guilty knowledge is an essential element of a criminal offense: Com. v. Junkin, 170 Pa. 194, 32 Atl. 617 (1895); Com. v. Weiss, 139 Pa. 247, 21 Atl. 10 (1891); Com. v. Bollinger, 197 Pa. Superior Ct. 492, 179 A. 2d 253 (1962); Com. v. Fine, 166 Pa. Superior Ct. 109, 70 A. 2d 677 (1950). See: 21 Am. Jur. 2d Criminal Law, §81 (1965). While mens rea or a "guilty mind" is generally a necessary element of a criminal offense, the legislature may enact a penal statute which makes proof of a guilty mind unnecessary: Clem's Cafe Liquor License Case, 425 Pa. 94, 227 A. 2d 491 (1967); Com. v. Grant, 235 Pa. Superior Ct. 357, 341 A. 2d 511 (1975); Com. v. Bready, 220 Pa. Superior Ct. 157, 286 A. 2d 654 (1971); Com. v. Yaple, 217 Pa. Superior Ct. 232, 273 A. 2d 346 (1970). It may do so especially if it determines that the harm posed by the proscribed conduct justifies the adoption of a strict liability standard: Clem's Cafe Liquor License Case, supra; Com. v. Koczwara, 397 Pa. 575, 155 A. 2d 825 (1959). Whether guilty knowledge is an element of an offense is a question of construction to be decided by examining the language of the statute in light of the act's purpose: Com. v. Koczwara, supra; Com. v. Grant, supra.

This principle is recognized and adopted by section 305(a) of the Pennsylvania Crimes Code of December 6, 1972, P.L. 1482, 18 C.P.S.A. §305, where it is provided:

"The requirements of culpability prescribed by section 301 of this title (relating to requirement of voluntary act) and section 302 of this title (relating to general requirements of culpability) do not apply to:

". . .

"(2) offenses defined by statutes other than this title, *in so far as a legislative purpose to impose absolute liability for such offenses or with respect to any material element thereof plainly appears.*" (Emphasis supplied.)

Abuses in the dispensing and use of controlled substances constitutes a sufficient threat of harm to justify the legislature's adoption of a strict liability standard. Compare: Clem's Cafe Liquor License Case, supra; Com. v. Koczwara, supra; Com. v. Grant, supra; Com. v. Bready, supra; Com. v. Yaple, supra.

A careful reading of section 13(a)(16) of the Controlled Substance law, supra, demonstrates that the legislature did not intend to require proof of knowledge of the prescription's invalidity in order to sustain a conviction for possessing a controlled substance. The words "knowingly or intentionally" refer to possession of the substance and require conscious dominion of the substance. When a knowing or intentional possession is demonstrated, criminal responsibility will be excused only if the possessor has a valid prescription for the substance. An invalid or forged prescription is not a defense. A lack of knowledge that the prescription is invalid will not make a forged prescription valid in fact and is insufficient to avoid criminal responsibility for possession of the substance.

Otherwise, we would permit a substantial loophole in the intended regulation of controlled substances and the requirement of prescriptions therefor. Persons lacking knowledge that a prescription has been forged could easily be made a

conduit for obtaining illegal drugs without any danger of being held criminally responsible therefor. A forged or invalid prescription would provide too easily fabricated a defense to a charge of possession of a controlled substance if knowledge of its invalidity were also an element of the offense to be proved by the Commonwealth. This, we believe, was not the intention of the legislature. Instead, the legislature made it a criminal act to possess illegal drugs unless such possession were rendered legal by a prescription valid in fact.

Indeed, an examination of other provisions of section 13(a) of the Controlled Substance law reveals that when the legislature intended to impose a mens rea element for a proscription which it established, it did so clearly and specifically. See subsections (7), (8), (17), (25), (29) and (30) of section 13(a). See also: Com. v. Koczwara, supra, at page 583.

For these reasons, we hold that in order to constitute a defense to a violation of subsection (16) of section 13(a) of the Controlled Substance law, supra, a prescription for such substance must in fact be a valid prescription. An invalid prescription will not excuse the possession whether the possessor has knowledge of its invalidity or not. Thus, in the instant case, the evidence was clearly sufficient to sustain the jury's verdict.

The charge of obtaining possession of a controlled substance by fraud, however, rests on a different footing. Subsection (a)(12) of section 780-113 makes criminal "[t]he acquisition . . . of a controlled substance by . . . fraud, forgery, deception or subterfuge." All of the above methods of obtaining possession of a controlled substance involve the element of scienter or knowledge: Com. v. Ander-

son, 237 Pa. Superior Ct. 208, 352 A. 2d 92 (1975); Shane v. Hoffmann, 227 Pa. Superior Ct. 176, 324 A. 2d 532 (1974); Com. v. DiPiero, 205 Pa. Superior Ct. 312, 208 A. 2d 912 (1965), cert. denied, 382 U.S. 992 (1966); Musser v. Shenk, 192 Pa. Superior Ct. 471, 161 A. 2d 628 (1960). Forgery, which is particularly applicable to the facts of this case, is defined by section 4101(a)(3) of the Crimes Code to include the uttering of an instrument which the actor knows to be forged. See also: Com. v. Anderson, supra; Com. v. DiPiero, supra. Similarly, the courts have repeatedly held that there is inherent in fraud the element of *knowingly* misrepresenting an existing fact: National Bldg. Leasing, Inc. v. Byler, _____ Pa. Superior Ct. _____, 381 A. 2d 963 (1977); Shane v. Hoffmann, supra; Musser v. Shenk, supra. We conclude, therefore, that one cannot be convicted of obtaining a controlled substance by fraud or forgery unless he or she has knowledge that the prescription is either forged or fraudulent.

The evidence in the instant case was insufficient to establish beyond a reasonable doubt that defendant had knowledge of the forged prescription. The Commonwealth produced no direct evidence to demonstrate that defendant knew the signature on the prescription to be other than genuine. Neither was his knowledge demonstrated circumstantially. The evidence that defendant presented the prescription and that he had maintained an association with DeCourcey was insufficient to prove knowledge. The Commonwealth's evidence was as readily suggestive of innocence as of guilt and did not in any manner contradict defendant's explanation that he had unwittingly presented a forged prescription while doing a favor for a friend and room-

mate. Similarly, the carrying of a list of physicians taken from the yellow pages of the telephone directory, even though inaccurately or untruthfully explained by defendant, was inadequate to permit an inference that defendant knew the prescription to be a forgery.

Since the Commonwealth's evidence did not prove beyond a reasonable doubt that defendant knew of the prescription's lack of authenticity, we must grant his motion in arrest of judgment with respect to the charge under section 780-113(a)(12). Compare: Com. v. Morgan, 237 Pa. Superior Ct. 402, 352 A. 2d 85 (1975); Com. v. Rothman, 226 Pa. Superior Ct. 319, 310 A. 2d 353 (1973).

Defendant's motion for new trial argues that the trial court erred in admitting into evidence the two pages from the Allentown telephone directory found on defendant's person at the time of his arrest. These pages contained the names of physicians, some of which were underscored. Although defense counsel initially objected to this line of questioning, he expressly withdrew the objection. Therefore, the arresting officer testified to the lists found on defendant's person and described them to the jury. Subsequently, on cross-examination of agent Langston, defense counsel made inquiry of his own concerning these pages from the telephone directory. It was only at the conclusion of the Commonwealth's case, after repeated reference to the telephone pages had been made, that defense counsel objected to the introduction of the pages themselves and asserted that they were irrelevant.

Any objection which defense counsel may have properly raised was waived by the withdrawal of his original objection to the finding of the telephone pages: United States v. Schartner, 426 F. 2d 470,

476 (3d Cir. 1970); Com. v. Johnson, 450 Pa. 575, 578, 301 A. 2d 632, 634 (1973); Com. v. Noel, 168 Pa. Superior Ct. 42, 48, 76 A. 2d 236, 238 (1950).

It is quite clear, moreover, that the admission of the physical evidence was completely harmless. The testimony of the finding of these pages was offered by the Commonwealth as a circumstance tending to show that defendant had knowledge of the forged prescription. We have held that this circumstance was insufficient to prove such knowledge. With respect to defendant's conviction for possession of a controlled substance, on the other hand, the evidence was clear and undisputed. Indeed, defendant himself admitted the possession.

Defendant also argues that because of its irrelevancy it was error for the court to receive into evidence a certified statement, under the seal of the Pennsylvania Department of Justice, reciting that Dr. Cook was not licensed to practice medicine in the Commonwealth of Pennsylvania. Not only was this relevant to demonstrate the invalidity of the prescription, but irrelevancy was not the reason given for defendant's objection at trial. Instead, defendant objected that the certificate was inadmissible as a hearsay statement. It is a firm rule that if the ground upon which an objection to the admission of evidence is specifically stated, all other reasons for the exclusion of the evidence are waived and may not be raised thereafter: Com. v. Williams, 476 Pa. 557, 383 A. 2d 503, 509 (1978); Com. v. McNeal, 456 Pa. 394, 398, 319 A. 2d 669, 672 (1974); Com. v. Budd, 443 Pa. 193, 195, 278 A. 2d 879, 880 (1971); Com. v. Raymond, 412 Pa. 194, 202-203, 194 A. 2d 221 (1963).

Defendant's motion for new trial, therefore, must be denied.

## ORDER

Now, May 25, 1978, for reasons appearing in an accompanying opinion, it is ordered that defendant's motion in arrest of judgment be sustained as to count no. 1 of the information, and defendant's conviction for obtaining a controlled substance by fraud is set aside and judgment thereon is arrested. With respect to the finding of guilt in the second count of the information, however, defendant's motions in arrest of judgment and for new trial are denied, and said defendant is directed to appear for sentencing in Courtroom No. 2 on June 2, 1978, at 9:30 a.m.