IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charlotte Grant,                :
           Appellant        :
                         :
       v.                   :
                         :
Southeastern Pennsylvania   :   No. 1294 C.D. 2021
Transportation Authority      :   Submitted: October 28, 2022


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                           FILED: January 23, 2023

Charlotte Grant (Grant) appeals from the Philadelphia County Common Pleas Court's (trial court) November 2, 2021 order granting the Southeastern Pennsylvania Transportation Authority's (SEPTA) motion for summary judgment (Motion) and dismissing Grant's complaint (Complaint) with prejudice. The sole issue before this Court is whether the trial court erred by granting summary judgment in SEPTA's favor and dismissing Grant's Complaint.[1] After review, this Court affirms.

On March 29, 2018, Grant boarded the Route 101 SEPTA trolley between Garrett Road and Beverly Road in Philadelphia, Pennsylvania. While entering the trolley, Grant was carrying a suitcase and speaking on her cell phone.

---

[1] Grant raises two issues in her Statement of Questions Involved: "whether the movement of the trolley was 'unusual' is an issue of material fact such that summary judgment was inappropriate[,]" Grant Br. at 8, and whether "the [t]rial [c]ourt [improperly] substituted its judgment for that of the jury[.]" Grant Br. at 14. Both issues are subsumed in the issue as stated by this Court, and will be addressed accordingly.

Grant moved to the main area of the trolley and put down the suitcase. Grant was not holding the railing when the trolley began to accelerate, she moved down the aisle, fell to the floor, and sustained an injury. No other trolley passengers fell or were injured as a result of the trolley's movement.

On May 16, 2019, Grant filed the Complaint against SEPTA, alleging negligence, specifically averring:

> 4. On or about March 29, 2018, [Grant], was a passenger on the Route 101 SEPTA trolley car, and had just entered the trolley car, when the duly authorized SEPTA agent, driver, employee, servant, worker, officer and/or manager to whom the SEPTA trolley car was assigned[,] suddenly and without warning accelerated the trolley car at an unusually high and dangerous speed and before [Grant] was in a safe position, causing [Grant] to fall and severely injure herself.
>
> 5. The Route 101 trolley car's floor was further unreasonably defective in that is was slick, slippery, and/or covered in an oily substance making the floor dangerous for prospective passengers to traverse or stand.

Reproduced Record (R.R.) at 16a. On August 2, 2021, SEPTA filed the Motion, arguing therein that Grant's claim did not satisfy the *Jerk and Jolt* doctrine.[2]

---

[2] The *Jerk and Jolt* doctrine provides:

> [T]estimony indicating that a moving trolley car jerked suddenly or violently is not sufficient, of itself, to establish negligence in its operation. There must be a showing of additional facts and circumstances from which it clearly appears that the movement of the car was **so unusual and extraordinary** as to be beyond a passenger's reasonable anticipation, and nothing short of evidence that the allegedly unusual movement had an extraordinarily disturbing effect upon other passengers, **or evidence of an accident**, **the manner of the occurrence of which or the effect of which upon the injured person** inherently establishes the unusual character of the jolt or jerk, will suffice.

*Connolly v. Phila. Transp. Co.*, 216 A.2d 60, 62 (Pa. 1966) (emphasis added) (quoting *Staller v. Phila. Rapid Transit Co.*, 14 A.2d 289, 291 (Pa. 1940)). Courts have referred to the doctrine as

2

The parties conducted depositions of Grant and the SEPTA trolley driver, and SEPTA produced a surveillance video of Grant's fall. After reviewing the evidence, on November 2, 2021, the trial court granted summary judgment. The trial court explained:

> When we consider the evidence in the record, viewed even in a light most favorable to [] Grant, we conclude that she is unable to establish facts sufficient to meet the threshold requirements for recovery under the "[J]erk and [J]olt" doctrine. As in *Martin* [*v. Southeastern Pennsylvania Transportation Authority*, 52 A.3d 385 (Pa. Cmwlth. 2012)], where the Commonwealth Court upheld [the] trial court's decision to grant summary judgment:
>
>> [The p]laintiff failed to present evidence supporting a finding that either the bus's acceleration or sudden stop constituted an unusual and extraordinary jerk or jolt beyond a passenger's reasonable anticipation. No other passengers, all of whom were seated, were affected by the movement of the bus. In addition, [the p]laintiff failed to present any other objective evidence of an unusual or extraordinary movement of the bus.
>
> [*Martin*,] 52 A.3d at 391.
>
> The surveillance video, when considered along with the deposition transcript and other exhibits, fails to demonstrate that the trolley's relevant motions had an "extraordinarily disturbing effect" on the other passengers. Nor did [Grant] adduce evidence that her fall was "so violent and unusual as to permit the jury to predicate a finding on it alone that the jerk was extraordinary and unusual" - which requires more than losing one's balance while standing or walking in a moving vehicle as it happened here. *Jackson v. Port Auth*[.] *of Allegheny C*[*nty*.], 17 A.3d 966, 970 (Pa. Cmwlth. 2011). *See* Pa.R.C[iv].P. [] 1035.2(2) (summary judgment proper if plaintiff "has failed to produce

both the "jerk or jolt doctrine" and the "jerk and jolt doctrine." *See, e.g.*, *Connolly*; *see also Jackson v. Port Auth. of Allegheny Cnty.*, 17 A.3d 966 (Pa. Cmwlth. 2011).

> evidence of facts essential to the cause of action [] which in a jury trial would require the issues to be submitted to a jury[]"). [] Grant's testimony and evidence, taken in its most favorable light, is insufficient to make negligence on SEPTA's part a jury question.

Trial Ct. Op. at 2-3. Grant appealed to this Court.[3] On January 18, 2022, the trial court issued its opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) (Rule 1925(a) Opinion).

Grant contends that the trial court erred by granting the Motion because whether the trolley's movement was *unusual* is a question of material fact for the jury.[4] This Court has emphasized that "the [J]erk and [J]olt test is difficult to meet." *Martin*, 52 A.3d at 390.

> [T]here are two ways to show that a jerk or stop was so unusual and extraordinary as to exceed a passenger's reasonable anticipation: (1) the jerk or jolt had an extraordinarily disturbing effect on other passengers[;] or[] (2) the manner of occurrence of the accident or its effect upon the plaintiff inherently established the unusual or extraordinary character of the jerk or jolt.

---

[3] The entry of summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. It may be granted only in cases where the right is clear and free from doubt. The moving party has the burden of establishing the nonexistence of any genuine issue of material fact. In addition, the record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Our review of an order granting summary judgment involves only an issue of law. Hence, our review is plenary.

*Bost-Pearson v. Se. Pa. Transp. Auth.*, 118 A.3d 472, 474 n.1 (Pa. Cmwlth. 2015) (citations omitted).

[4] With respect to the alleged slippery floor, Grant contends only that the condition of the trolley floor is one "example[] of the evidence of the unusual nature of the acceleration such that summary judgment was inappropriate." Grant Br. at 14.

4

*Id.* at 391.

As no other passengers fell or were injured, Grant seeks to satisfy the Jerk and Jolt test's second prong, under which "[a] plaintiff may raise a factual question **requiring submission of the case to the jury** *by showing* 'evidence of an accident, the manner of the occurrence of which or the effect of which upon the injured person inherently establishes the **unusual** character of the jerk or jolt.'" *Asbury v. Port Auth. Transit of Allegheny Cnty.*, 863 A.2d 84, 89 (Pa. Cmwlth. 2004) (emphasis added) (quoting *Connolly v. Phila. Transp. Co.*, 216 A.2d 60, 62 (Pa. 1966)).

> Regarding the "abrupt" nature of the driver's actions, it is well established that descriptive language such as "sudden jerk," "unusual jerk," and "it threw me violently on the floor," is insufficient, in and of itself, to sustain a finding of negligence. *McClusky v. Shenango Valley Traction Co.*, . . . 161 A. 424, 425 ([Pa. Super.] 1932). As the [C]ourt subsequently observed: "[I]f every person thrown and injured in a street car could recover damages on proof merely that he was '*violently*' thrown, the resulting burden on the carrier would be unbearable." *Watson v. Pittsburgh Rys*[.]*, Co.*, . . . 132 A.2d 718, 719 ([Pa. Super.] 1957) (emphasis added). Accordingly, without more, descriptive language such as "abrupt" is not sufficient proof of negligence. *Francis v. Se. Pa. Transp. Auth.*, . . . (Pa. Cmwlth.[] No. 825 C.D. 2009, filed Dec[.] 16, 2009), slip op. at 6-7.[5]

*Bost-Pearson v. Se. Pa. Transp. Auth.*, 118 A.3d 472, 475 (Pa. Cmwlth. 2015).

> [T]o show that the fall was so violent and unusual as to permit the jury to predicate on it alone a finding that the jerk was extraordinary and unusual - requires more than losing one's balance while standing or walking in the bus. As this Court acknowledged in *Meussner* [*v. Port*

---

[5] Unreported decisions of this Court, while not binding, may be cited for their persuasive value. Section 414(a) of the Internal Operating Procedures of the Commonwealth Court, 210 Pa. Code § 69.414(a).

*Authority of Allegheny County*, 745 A.2d 719 (Pa. Cmwlth. 2000)], **it is common knowledge that one's balance is more easily lost when walking or standing in a moving bus than when seated**. "'**It is common knowledge that a passenger can be thrown out of his seat only by an unusual or extraordinary jerk**, whereas it is not unusual for persons to lose their balance while standing or walking in a car if an ordinary or moderate jerk occurs**.' *Smith v. Pittsburgh R[ys.] Co.*, . . . 171 A. [879], 880 [([Pa.] 1934).]" *Meussner*, 745 A.2d at 721 (quoting *Hufnagel v. Pittsburgh R[ys.] Co.*, . . . 29 A.2d 4, 6 ([Pa.] 1942)) (first two alterations in original). *See also*, *Asbury* . . . (plaintiff was the only passenger not seated who fell down when bus accelerated).

*Jackson*, 17 A.3d at 970 (emphasis added; quotation marks and citation omitted).

Grant also asserts that

the case must be submitted to a jury because, as SEPTA ultimately contends, the threshold inquiry in a [J]erk and [J]olt case is whether the "manner of the occurrence of the accident or the effect of which upon the plaintiff inherently establishes the *unusual* character of the jolt or jerk." That is, without doubt, an issue of material fact only a jury can answer.

Grant Br. at 14. To the extent that Grant contends that "whether the movement was unusual or extraordinary is a factual issue that can **only** be decided by the finder of fact[,]" this Court disagrees. Grant Br. at 12 (italic emphasis omitted; bold emphasis added). This Court has repeatedly recognized that trial courts may grant summary judgment if the Jerk and Jolt test is not satisfied. *See, e.g.*, *Bost-Pearson*; *Martin*; *Jackson*; *Devlin v. Se. Pa. Transp. Auth.* (Pa. Cmwlth. No. 1076 C.D. 2015, filed Feb. 24, 2016); *Burno v. Se. Pa. Transp. Auth.* (Pa. Cmwlth. No. 772 C.D. 2014, filed Mar. 18, 2015).[6]

---

[6] *Devlin* and *Burno* are cited for their persuasive value.

In *Devlin*, the trial court granted summary judgment after it reviewed video evidence of a plaintiff's fall on a SEPTA vehicle and observed that there was no unusual or extraordinary movement of the bus . This Court affirmed, explaining:

> Like the trial court, we reviewed SEPTA's video recording and after reviewing it, we agree with its observation []:
>
>> At the time of the fall, the bus was traveling in the left lane towards an intersection, moving at a speed consistent with that of the surrounding traffic, with no other vehicles in close proximity. The movement of the bus at the time of [Devlin's] fall is such that, *as established by the video*, only the slight forward movement of the other, seated passengers offers an indication that the bus was actually slowing to any measurable degree. Once the bus driver notice[d] that [Devlin] ha[d] been injured, he [brought] the bus to a complete stop approximately five seconds after [Devlin's] fall. Distinctly absent from this multi-angle video is anything showing that the bus moved in an extraordinary or unpredictable way, or that any of the passengers, other than [Devlin] herself, were disturbed by its nearly imperceptible, pre-fall deceleration.
>
> ([trial ct. op. at 5]) (emphasis in original) (internal citations omitted).
>
> In this case, there is no countervailing evidence of the bus's excessive speed or any other factors indicating that this was an extraordinary jerk and jolt as to be beyond Devlin's reasonable anticipation that would raise an issue of a disputed material fact. No matter whether she was knocked down by sudden acceleration or a sudden stop, it is not uncommon for a standing person on a bus to lose his or her balance if an ordinary or moderate jerk occurs. Although Devlin testified to the manner and extent of her injuries, neither injuries alone or, for that matter, the extent of her injuries, support an inference of an extraordinary or unusual jerk or jolt.

7

*Devlin*, slip op. at 8-9.

> Here, the trial court explained in its Rule 1925(a) Opinion:
>
> [T]he Pennsylvania Supreme Court has held that when a video recording "blatantly contradicts" the non-moving party's assertions, summary judgment is appropriate. *Sellers v. Twp. of Abington*, . . . 106 A.3d 679, 690 ([Pa.] 2014) []; *see id.* at n.9 (noting that there were "no allegations that the [] camera recording was altered[]"). Here, we find that the video recording demonstrates that when the trolley started moving, neither the character or nature of [Grant's] fall nor the manner in which the other passengers moved could leave a fact-finder with any basis to reasonably infer that the trolley's movement was so "violent and extraordinary" as to meet the threshold to establish negligence under the "[J]erk and [J]olt" doctrine.

Rule 1925(a) Op. at 8.

> The trial court noted:
>
> The surveillance video in this case demonstrates a factual scenario practically identical to the one in *McClusky* . . . . In *McClusky*, plaintiff boarded a bus that accelerated quickly before she was able to grab anything for support, and she lost her balance and fell. The [Pennsylvania Superior C]ourt considered the character of plaintiff[']s fall and lack of evidence regarding the effect on other passengers. The [*McClusky*] Court then determined that "the character of plaintiff's fall was not so violent and unusual as to permit the jury to predicate on it alone a finding that the jerk was extraordinary and unusual, and, therefore, negligent." *Id.* at [425]. [The [*McClusky* C]ourt then went on to distinguish these facts from those in *Sanson v. Philadelphia Rapid Transit Co*., . . . , 86 A. 1069 (Pa. 1913), where the passenger had risen from a seat and the sudden increase in speed from the trolley caused him to be thrown out the doorway onto the platform and into the street. *McClusky*, . . . [161 A. at 425]. Sanson presented the type of "jerk and jolt" effect "inherently establishing the extraordinary character of the jolt." *Id.*
>
> Considering the surveillance video, along with the deposition transcript and other exhibits, the facts here fail

8

to demonstrate that the trolley's relevant motions had an "extraordinarily disturbing effect" on the other passengers. Nor did [Grant] adduce evidence that her fall was "so violent and unusual as to permit [a] jury to predicate a finding on it alone that the jerk was extraordinary and unusual" - which requires more than losing one's balance while standing or walking in a moving vehicle as happened here. [] *Jackson*, 17 A.3d [at] 970 [].

Rule 1925(a) Opinion at 6-7. Based on the aforementioned case law, and the record evidence, including Grant's testimony regarding the incident, *see* R.R. at 55a, and this Court's review of the surveillance video, this Court, like in *Devlin*, agrees with the trial court's observations and reasoning, and discerns no error.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charlotte Grant,                               :
              Appellant              :
                             :
          v.                                    :
                             :
Southeastern Pennsylvania         :       No. 1294 C.D. 2021
Transportation Authority              :

## O R D E R

AND NOW, this 23rd day of January, 2023, the Philadelphia County Common Pleas Court's November 2, 2021 order is affirmed.


_____

ANNE E. COVEY, Judge